UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JANE DOE,                                          No.: 1:18-cv-10924

                                  Plaintiff,

                                                   Judge Paul A. Crotty

                -against-

                                                   **COMPLAINT AND DEMAND**
ANONYMOUS INC., and JOHN DOE, individually         **FOR JURY TRIAL**
and in his official capacity,

                                  Defendants.
------------------------------------------------------------------X


        Plaintiff, JANE DOE, by and through her attorneys, MARK DAVID SHIRIAN, P.C.,

complaining of the Defendants, ANONYMOUS INC. and JOHN DOE, individually and in his

official capacity, respectfully alleges as follows:

        1.      This firm, MARK DAVID SHIRIAN P.C., represents Plaintiff JANE DOE

(hereinafter "Plaintiff") in connection with her claims against her former employer, Defendant

ANONYMOUS INC., (hereinafter "Anonymous Inc.") and her former supervisor JOHN DOE,

individually and in his official capacity.

        2.      The instant action is a quid pro sexual harassment claim arising from Jane Doe's

employment with Anonymous Inc. and John Doe. Specifically, Plaintiff brings this action for

gender discrimination, quid pro quo sexual harassment, hostile work environment, retaliation, and

constructive discharge, under N.Y.C. Admin. Code § 8-107 *et al* ("NYCHRL").

                            **JURISDICTION AND VENUE**

        3.      This court has diversity jurisdiction under 28 U.S.C. 1332 because the amount in

controversy exceeds $75,000.00 and is between citizens of different states. This Court has

supplemental jurisdiction over Plaintiff's NYCHRL claims.

4.     Venue properly lies in the Southern District of New York pursuant to 28 U.S.C. 1391(b), because the claims arose in this judicial district and the defendant is doing business in this District.

## PARTIES

5.     Plaintiff Jane Doe is a 43 year-old Jewish female who was born in England. Jane Doe resides in New York County, City and State of New York.

6.     At all relevant times, Plaintiff Jane Doe met the definitions of an "employee" and a under all applicable statutes.

7.     Defendant, Anonymous Inc., the entire name being fictitious, is a financial advisory firm based in New Jersey with offices in New York City, Switzerland and Boston. The firm provides comprehensive wealth management, tax strategies, investment planning, and institutional services to high net worth and affluent individuals and families worldwide.

8.     At all relevant times, Anonymous Inc. has met the definition of an "employer" under all applicable statutes.

9.     Anonymous Inc. was an employer of Jane Doe at all relevant times to this action.

10.     Defendant John Doe, the name being fictitious, is a 47 year old Catholic male who was and currently is the Chief Executive Officer and Founder of Anonymous Inc. John Doe presently resides in the State of New Jersey with his wife and children.

11.     John Doe earned a Bachelor degree in Architecture & Civil Engineering from Catholic University in Washington, DC, a Juris Doctorate from Suffolk University Law School in Boston, and an Investment Management Certificate from Wharton's Executive Education Program.

12.     Defendant John Doe is and was at all relevant times herein acting in the course and scope of his duties and functions for Anonymous Inc. as an agent, servant, supervisor and employee of defendant Anonymous Inc., and was acting for, and on behalf of, and with the power and authority vested in him by Anonymous Inc., and was otherwise performing and engaging in conduct incidental to the performance of his functions in the course of his duties as a C.E.O., who implemented, enforced, and/or effectuated the policies and unlawful conduct of which is the subject policy of this action. Defendant John Doe is sued in his individual and official capacity.

13.     At all relevant times relevant hereto, Defendant John Doe exercised managerial and/or supervisory responsibility over the Plaintiff.

14.     At all relevant times, John Doe has met the definition of an "supervisor" under all applicable statutes.

15.     John Doe was a supervisor of Jane Doe at all relevant times to this action and had the ability to hire and/or fire Jane Doe.

## PROCEDURAL BACKGROUND

16.     On or about October 17, 2018, Plaintiff filed a Summons with Notice in New York County Supreme Court against the Defendants and was assigned Index No.: 159601/2018 ("State Court Action").

17.     Simultaneously on the same date, Plaintiff filed an Order to Show Cause requesting that the State Court Action be sealed and for the use of pseudonyms for the parties.

18.     On or about November 21, 2018, the Defendants removed the State Court Action to Federal Court.

19.     This lawsuit has been timely filed within three years of Plaintiff's constructive discharge in October of 2015 from Anonymous Inc.

20.     Any and all other prerequisites to the filing of this suit have been met.

**FACTUAL BACKGROUND**

21.     Jane Doe was hired by Anonymous Inc. as a Director in or around September 2013.

22.     During the course of her employment with Anonymous, Jane Doe was subjected to unwanted sexual physical and verbal advances by John Doe, the C.E.O. of Anonymous Inc.

23.     Jane Doe met John Doe prior to working for him, in December 2012 at a Chanukah party hosted by Chabad on 57th and 5th Avenue in Manhattan.

24.     At that time,  Jane Doe mentioned that she had worked with family offices and is connected with many high net worth individuals that she could introduce to John Doe, for the benefit of John Doe and Anonymous Inc.

25.     John Doe was in the process of starting Anonymous Inc. and John Doe mentioned that he would be in touch with Jane Doe in order to further discuss this.

26.     During that time, John Doe kept in touch and followed up with Jane Doe.

27.     On or about January 1, 2013, Jane Doe was notified by her family that her father was diagnosed with pancreatic cancer. Jane Doe was alone in the United States at this time.

28.     Unfortunately, Jane Doe's father ultimately passed away in or around May of 2013. Jane Doe became despondent and devasted at the untimely and tragic passing of her late father.

29.      John Doe occasionally touched base with Jane Doe during this time. Around this time, John Doe offered Jane Doe a job at his company, Anonymous Inc. as a Director of Marketing and Investor Relations.

30.     In or around July 2013, at the negotiating table, while Jane Doe was at a conference in Newport, Rhode Island, John Doe met with Jane Doe in order to discuss salary requirements for

her position at Anonymous Inc. Initially, John Doe offered Jane Doe a salary of $30,000.00 per year plus commissions.

31.     After negotiating back and forth, John Doe ultimately offered Jane Doe a salary of $100,000 per year after low balling Jane Doe with initial offers lower than $100,000.

32.     At the same time, in July 2013, John Doe suggested that they could have an affair and that it would not change anything with Jane Doe's role and job with Anonymous Inc. Jane Doe firmly said no and declined John Doe's advances and proposition for an affair at that time.

33.     Jane Doe told John Doe that she was a religious modern orthodox Jewish lady and that she was not looking for a relationship with a Catholic married man with three children.

34.     At that time, Jane Doe was in her late thirties and was focused on dating for marriage.

35.     Initially, John Doe respected Jane Doe's orthodox beliefs and allowed Jane Doe days off for the Jewish holidays.

36.     Jane Doe worked from Anonymous Inc's New York City office located in Manhattan, County of New York, City and State of New York.

37.     John Doe would constantly compliment Jane Doe all the time in front of other employees and colleagues of Anonymous Inc.

38.     John Doe made the following harassing comments to Jane Doe:

39.     "You have an aura about you"; and
40.     "You are so beautiful; you are perfect; you are stunning."

39.     John Doe would often stare at Jane Doe.

40.     John Doe would periodically show off Jane Doe to his colleagues and would invite Jane Doe for drinks and dinners to hang out.

41.     Jane Doe went out with John Doe when he would come to the New York office from the New Jersey office because John Doe was Jane Doe's boss and supervisor and Jane Doe wanted to keep her job and visa to remain in the United States.

42.     John Doe developed an obsession with Jane Doe.

43.     John Doe sent text messages to Jane Doe at 6 AM in the morning to tell Jane Doe that he had dreams of Jane Doe and that he could not stop thinking about her. John Doe would also text Jane Doe about when he would be arriving to the New York City office for visits.

44.     John Doe texted Jane Doe constantly while Jane Doe worked for Anonymous Inc.

45.     On one occasion, Jane Doe and John Doe went out for dinner and drinks and came back to the office to collect their things. John Doe started kissing Jane Doe in the office late at night.

46.     Jane Doe could not tell anyone at the firm or anyone connected with the firm about this and felt powerless and without any support. Jane Doe did, however, inform her therapists and best friends at the time.

47.     One night after meetings at a townhouse home on Central Park West, John Doe drove Jane Doe to her apartment. John Doe would always drive Jane Doe back if he had driven into Manhattan from New Jersey.

48.     On one occasion, John Doe dropped Jane Doe off and started kissing Jane Doe, when John Doe proceeded to expose his penis to Jane Doe. Jane Doe refused to touch him in that area. However, John Doe proceeded to touch himself and ejaculated all over his suit in front of Jane Doe in his car. John Doe said it was incredible and that it was all worth it.

49.     John Doe and Jane Doe worked on transactions with individuals whom Jane Doe had initially introduced to John Doe.

50.     John Doe would periodically attend events with Jane Doe.

51.     In December 2013, Jane Doe invited John Doe to a very high profile holiday event which was hosted by the Chief Marketing Officer at Apollo, the private equity giant. This was a hard to access event. Jane Doe was successful at securing multiple introductions for Anonymous Inc., both in terms of private equity opportunities such as the Stradivarius violin bitcoin transaction that raised John Doe's and Anonymous Inc.'s public profile and visibility, which attracted prospective clients to the firm.

52.     John Doe was invited to speak with the Wall Street Journal TV and Bloomberg TV with a high-net worth family that Jane Doe had introduced him to over a Stradivarius violin which was purchased by John Doe and Anonymous Inc. using bitcoin.

53.     Jane Doe and John Doe worked closely on that particular transaction and spent a lot of time together. John Doe kept saying that all the success was because of Jane Doe, and that she was incredible. John Doe promised that the achievement would lead to a promotion and that perhaps Jane Doe would be considered a partner at Anonymous Inc. some day.

54.     John Doe planted false ideas in Jane Doe's head during this time.

55.     John Doe was simply relentless on his quest to have Jane Doe in bed.

56.     John Doe once told Jane Doe that he gave up thinking about her for lent.

57.     The high net worth family involved in the Stradivarius bitcoin transaction told Jane Doe that when John Doe purchased the violin for Anonymous Inc., they gave John Doe the $100,000 commission, which was originally meant to be for Jane Doe.

58.     Specifically, prior to the introduction that Jane Doe secured for John Doe and Anonymous Inc., the high net worth family had promised to pay Jane Doe a commission if she sold any of their Stradivarius violins.

59.     As such, Jane Doe was entitled to that $100,000 commission but John Doe refused to pay Jane Doe this commission, even though she was promised this commission and payment by John Doe pursuant to their arrangement and work agreement.

60.     Upon information and belief, John Doe used this commission to pay Jane Doe her salary.

61.     Jane Doe was never paid a commission off of this transaction involving the Stradivarius violin. John Doe came up with many excuses in order to avoid paying Jane Doe this commission.

62.     Jane Doe helped build Anonymous Inc.'s public profile. Moreover, John Doe would often comment and apologize that Jane Doe was not getting the credit for the increased fame and recognition that John Doe and Anonymous Inc. had received.

63.     Jane Doe and John Doe commenced work on an innovate transaction together with a high net worth family with whom there was a joint venture that Jane Doe secured. This transaction led to a lot of press activity and John Doe was interviewed at Bloomberg, WSJ and the New Yorker.

64.     John Doe kept praising Jane Doe for this transaction.

65.     In or around December 2013, in her mid-year review, John Doe expressed that he was very impressed with Jane Doe's performance, and wanted Jane Doe to continue working for the Anonymous Inc.

66.     Jane Doe and John Doe shared a glass of Champagne to celebrate at a bar near Columbus Circle in Manhattan.

67.     Over time, approximately seven months into her job, Jane Doe relented and began a relationship with John Doe in light of Jane Doe's emotional vulnerability from the passing of her

father and the long hours she had expended at the New York office, and working closely with John Doe on the transaction.

68.     John Doe would often express to Jane Doe that he did not care about cheating on his wife, and would make the following comments to Jane Doe:

- " I only want to be with you";

- "It's you"; and

- "You have this power over me."

69.     Jane Doe and John Doe would just kiss at first on occasion when John Doe would visit the New York office. John Doe even booked hotel rooms in New York City in the hopes that Jane Doe would stay with him overnight.

70.     Jane Doe did sleep over with John Doe on one occasion, which Jane Doe severely regretted.

71.     John Doe would also send gifts to Jane Doe like a massage gift at the Mandarin Oriental hotel for Jane Doe's birthday on June 8, 2014.

72.     In or around July 2014, Jane Doe was invited to the Opal family office conference, which took place in Newport, Rhode Island at the end of July 2014.

73.     Jane Doe wanted to go but needed approval for travel expenses and asked John Doe.

74.     John Doe decided to approve Jane Doe's request and decided to accompany Jane Doe at this conference. Jane Doe had been to this conference before and knew how to navigate the conference. Jane Doe was determined to succeed at her job at Anonymous Inc. and to drive clientele their way.

75.     As a result, John Doe and Jane Doe booked rooms at two separate hotels for this conference in Newport, Rhode Island.

76.     Unfortunately, as Jane Doe arrived, she went for a morning run and dropped her cell phone and it broke. Jane Doe had no way to communicate. When Jane Doe did finally find John Doe, he said that he would find a store so that they could purchase a new cell phone the following morning.

77.     While Jane Doe was at the Opal conference in Newport, Rhode Island, she received a message from her friend that an article had been published regarding the Stradivarius violin bitcoin transaction. The journalist, Rebecca Mead from the New Yorker shadowed the high net worth family for her article for over six months. John Doe and Anonymous Inc. were referenced in this article. There was not one mention of Jane Doe. Jane Doe became upset and expressed her sadness and disappointment to John Doe, who consequently apologized.

78.     It was at this conference that John Doe propositioned Jane Doe at her hotel in Newport in Rhode Island.

79.     Upon information and belief, John Doe's gesture was a farce and his actions were solely committed in order to get Jane Doe to sleep with him.

80.     Jane Doe was adamant that she would never engage in an intimate relationship with John Doe upon his multiple requests and demands for an intimate relationship and extramarital affair with her.

81.     It was against Jane Doe's beliefs to engage in an affair with a married Catholic man and especially a father to three children.

82.     Jane Doe accompanied John Doe to sessions at the conference and at the after party cocktail receptions, Jane Doe became intoxicated at the party and left with John Doe.

10

83.     John Doe escorted Jane Doe back to the hotel that she was staying in.

84.     However, upon dropping Jane Doe off at her hotel, John Doe did not want to leave. John Doe stood around for a while and propositioned Jane Doe for sex.

85.     Jane Doe turned him down and went to bed.

86.     The following evening, John Doe tried to enter Jane Doe's hotel room again while she was tipsy and she allowed it after John Doe took advantage of an inebriated employee in Jane Doe.

87.     After the Newport trip, Jane Doe made a firm decision that the intimate relationship between herself and John Doe needed to end.

88.     Upon information and belief, Anonymous Inc. did not have a human resources department. As a result, Jane Doe felt helpless because she was unable to report John Doe's conduct to anyone at the firm.

89.     However, Jane Doe did share her anguish over this with her therapist at the time at the Jewish Board Bereavement Center, where Jane Doe had already been seeking relief in light of her father's passing.

90.     Jane Doe became confused and conflicted over the harassment she endured by John Doe. Jane Doe feared that she would lose her job by not giving into John Doe's demands for an intimate relationship.

91.     As a result, in or around August 2014 at Bryant Park in Manhattan, Jane Doe told John Doe that their relationship was hurting her and that she could no longer continue their intimate relationship, as she felt troubled and conflicted by the predicament and John Doe's harassing behavior.

92.     After Jane Doe ended the intimate relationship with John Doe, John Doe distanced himself away from her Jane Doe.

93.     Jane Doe reached out to John Doe and he said that he could not be friends with Jane Doe and needed some time alone.

94.     In or August 2014, approximately two weeks later, John Doe asked to meet with Jane Doe after work and they went for a walk in Bryant Park. John Doe then informed Jane Doe that he could no longer justify paying her a salary, which was clearly because of the end of their intimate relationship.

95.     John Doe proceeded to inform Jane Doe that he had done her a huge favor by paying her a salary.

96.     However, in an effort to soften the blow, John Doe offered Jane Doe a demotion to a  position in Anonymous Inc.'s newly formed capital markets position, where employees would work on a commission basis only, which, in essence, was a demotion from her previous salaried position and role as a Director.

97.     Jane Doe finally accepted out of desperation.

98.     John Doe then informed Jane Doe that she could not get licensed, which would negate any possibility of her legally receiving commissions.

99.     However, John Doe promised Jane Doe that he would pay her for any commissions for the capital markets position with Anonymous Inc., as well as for the position she took with Lateral, *infra,* both of which John Doe and Anonymous Inc. failed to ultimately honor.

100.    John Doe then began to give Jane Doe false hope that she would be back at her former position with Anonymous Inc. in the future. John Doe wanted to be friends with Jane Doe and he offered to help her.

101.   Jane Doe was shocked that John Doe decided to demote Jane Doe from her salaried position and she asked him how could he do that to her, especially since he knew how upset she had been over her father's death and in light of the fact that he professed his love for Jane Doe and that he did not want to hurt Jane Doe.

102.   John Doe made it seem that he could no longer give Jane Doe "preferential treatment" any longer and that her salary became an issue for the other male partners of Anonymous Inc.

103.   After Jane Doe accepted the demotion, Jane Doe continued to work for Anonymous Inc. and continued to have access to her business email address, and confidential personnel files and reports of Anonymous Inc., with the approval and knowledge of John Doe through 2016.

104.   Jane Doe continued to receive her salary until in or around November 2014, when Anonymous Inc. stopped paying Jane Doe a salary for her role as a Director.

105.   Since the August 2014 conversation, Jane Doe continued to associate herself with Anonymous Inc. through the commission based position, in light of the demotion, as she was scared to lose her visa. Jane Doe did not report John Doe's harassing and abusive behavior, as she was scared to wreck his family and she felt ashamed. Jane Doe was also still dealing with her father's passing and the thought of no salary put Jane Doe on an emotional and tortured rollercoaster.

106.   Following the demotion, Jane Doe continued to use Anonymous Inc.'s office located at 1500 Broadway in Manhattan. John Doe allowed Jane Doe to retain access to her email account and the server at the firm.

107.   Moreover, at all relevant times herein, Jane Doe's biography, photograph and role remained on the Anonymous Inc's website. Jane Doe continued to utilize Anonymous Inc.'s

equipment and technical support when needed, and kept in touch with John Doe and his assistant and the office manager at the time.

108.   Jane Doe then began working on a few projects with John Doe and his team in her demoted role as a commission based employee of Anonymous Inc.

109.   Jane Doe and John Doe would discuss work related items all the time. John Doe shared everything regarding Anonymous Inc. with Jane Doe and he would keep her updated on all the investments and the personnel turnover at Anonymous Inc., including a pending lawsuit at that time.

110.   Around February 2015, John Doe approached Jane Doe and suggested that she work with Richard de Silva and Kenneth Masters at a credit-based fund called Lateral Investment Management ("Lateral"), a California based fund that Anonymous Inc. had seeded and whose managers manage Anonymous Inc.'s  private debt fund.

111.   Upon information and belief, Lateral Investment Management was a subsidiary of Anonymous Inc. and was part of the Anonymous Inc. umbrella.

112.   Upon information and belief, John Doe was and is currently an Advisory Board member of Lateral.

113.   Lateral was looking to raise money and grow, and such growth of Lateral would have ultimately benefitted John Doe and Anonymous Inc.

114.   Jane Doe took on this role as an independent contractor consultant position with Lateral at the suggestion of John Doe, as she was under the impression that she would eventually be promoted back to a salaried position with Anonymous Inc.

115.    Jane Doe had previously met Richard de Silva and Kenneth Masters a year prior when they met John Doe for the first time. John Doe wanted Jane Doe's opinion on these individuals at Lateral.

116.    Jane Doe signed a contract with Lateral Investment Management and used the Anonymous Inc. email address and office address while performing work for Lateral.

117.    As part of her role as a consultant with Lateral, Jane Doe hosted a series of lunches and dinners in New York and California for Lateral and invited relevant investors from her own rolodex.

118.    Jane Doe hosted a dinner for Lateral at the Marriot Marquis in New York with approximately twenty-five to thirty investors from her rolodex.

119.    Jane Doe also organized a dinner at the Brasserie restaurant on Lexington Avenue for forty investors.

120.    Jane Doe attended conferences with Lateral in New York City and Los Angeles, including the Milken Conference, which took place in April 2015, through her contacts.

121.    Jane Doe reached out to her personal connections and used the internal Milken application to invite very high profile investors to a dinner Jane Doe painstakingly put together for Lateral at a mansion in Beverly Canyons at the home of the daughter of the former owner of Caesars Casino in Las Vegas. Jane Doe secured this venue for free through her connections.

122.    The dinner was a great success for Lateral and was attended by numerous high profile pension-fund managers, endowments, and family offices.

123.    Jane Doe's connections led to many introductions and access to high net worth individuals for Lateral and ultimately Anonymous Inc.

124.     Upon information and belief, in or around April 2015, Anonymous Inc. announced the hiring of a male advisor from the Goldman Sachs Family Office as a managing director.

125.     In or around May 5th through the 8th, 2015, Jane Doe stayed in Los Angeles and arranged a series of one on one meetings with high profile investors for the Skybridge Alternatives (SALT) Conference in Las Vegas, which was attended by very high profile and successful individuals.

126.     At the end of May to the beginning of June of 2015, Jane Doe's assignment with Lateral ended. However, Jane Doe had an issue with obtaining reimbursement from Lateral for the expenses she incurred for her flights to Los Angeles, hotels in Los Angeles, travel and basic necessities, including food.

127.     Jane Doe approached John Doe and asked him to press Lateral , as she was waiting for months to obtain reimbursement from Lateral.

128.     Money became very tight for Jane Doe, as she had to pay for rent, groceries, and bills and she was no longer earning a salary from Anonymous Inc.

129.     Moreover, Jane Doe's contract with Lateral included that she would receive a bonus from the introductions that she secured that eventually led to investments into Lateral.

130.     Jane Doe secured many introductions for Lateral and she was never made aware of any commissions that she was entitled to from the introductions that she made that may have turned into investments for Lateral.

131.     Again, Jane Doe asked John Doe about any bonuses that she was entitled to, as she no longer trusted Lateral. However, John Doe would often come up with excuses for why Jane Doe would not be paid commissions.

132.    During the course of her work with Lateral, Jane Doe represented Anonymous Inc. at the conferences and dinners she attended and continued to make introductions and presented deal flow, despite not being paid a salary for her efforts by Anonymous Inc.

133.    Additionally, during this time, Jane Doe worked alongside the capital markets group within Anonymous Inc., specifically with John Gallagher and Phil Boeding, who were male employees of Anonymous Inc., as they were all preparing to launch a financial technology ("fintech") fund within Anonymous Inc. John Gallagher and Phil Boeding asked Jane Doe to assist them on this initiative and covered all of her costs (hotel, travel etc.,) when they all went to the Opal conference in Newport, Rhode Island in July 2015.

134.    John Doe, as C.E.O of Anonymous Inc. was fully apprised of Jane Doe's continued involvement with Anonymous Inc. since he stopped paying her a salary since November 2014.

135.    Moreover, during this time, Jane Doe was  in continuous contact with John Doe and he would praise Jane Doe for her efforts and talents.

136.    Although Jane Doe had not been paid a salary since John Doe's decision to demote her, Jane Doe needed these jobs and the money. More importantly, Jane Doe needed to keep her visa, which is why she continued to work at Anonymous Inc. and continued to be in contact with John Doe, even though she was not no longer paid a salary.

137.    Moreover, John Doe made several promises to Jane Doe after Anonymous Inc. stopped paying her a salary. Specifically, John Doe would occasionally call Jane Doe and inform her that he was in the process of hiring two males from Goldman Sachs Family Office as directors, and that he was working on a merger.

138.     Moreover, John Doe promised that once everything was sorted out from the potential merger that perhaps there would be an opportunity for Jane Doe to be a salaried employee of Anonymous Inc. again "when the time" was right.

139.     As a result, Jane Doe maintained hope that John Doe would eventually promote her to her previous role as a Director at Anonymous Inc. Jane Doe continued to work for Anonymous Inc. in the hopes of obtaining a work visa through Anonymous Inc.

140.     In or around October 2015, Jane Doe went through another depression because of her lack of compensation and acknowledgment of her efforts by Anonymous Inc. and John Doe and retreated to her best friend's home in Las Vegas in order to feel love and support.

141.     Although John Doe promised Jane Doe a promotion with Anonymous Inc., Jane Doe continued to ask John Doe when the promotion would happen, only to hear excuses.

142.     Jane Doe stayed in Las Vegas for the month of October and November 2015.

143.     During that time there, Jane Doe's final assignment for Anonymous Inc. was to attend a family office conference in Las Vegas in October 2015.

144.     In or around October 2015, while at the conference, Jane Doe decided that she could no longer work for Anonymous Inc., as she was not getting paid a salary and John Doe failed to promote Jane Doe to her original and salaried role as a director.

145.     As such, on or about October 21, 2015, Jane Doe decided to constructively discharge herself from her employment with Anonymous Inc., as it became clear that a promotion and/or a  salaried opportunity at Anonymous Inc. would not be forthcoming, despite promises of the same by John Doe since the termination of the romantic relationship with John Doe in August 2014.

146.    As such, Jane Doe sent an email to Cheryl Andrew, John Doe's assistant and office manager to close access to her server and email account to remove her bio from the Anonymous Inc. website.

147.    In response, Cheryl Andrew wrote, on October 22, 2015 at 6:59 AM:

> Hi (Jane Doe),
>
> I saw that you have requested all of your outlooks contacts to be exported. I hope your not leaving!! I think you're such a sweet and good person. You have been on my mind lately too. I have been thinking about you because we have not spoke in awhile.
>
> I hope all is well. Please let me know if I can help you?
>
> Thank you,
>
> Cheryl

148.    On October 22, 2015, Jane Doe responded by email and wrote the following:

> Hi Cheryl
>
> Yes, I am leaving. A move that is long overdue. Thank you for your kind words. I would like to have the email account closed by month end and have my contacts moved to my personal email account. Can you ask Olmec to send me instructions.
>
> Thank you ! You've always been very helpful to me and I appreciate that. Best,
> (Jane Doe)

149.    In response, Cheryl Andrew responded by email and wrote the following:

> Hi (Jane Doe),
>
> Oh NO!! That is sad news. I'm really sorry to hear that! Where ever you end up they are lucky to have you! I have requested Olmec to reach out and help export your outlook contacts. If your not already in my Linkedin I will send you an invite. I think you're wonderful and I wish you well!
> Prior to ending any access I will reach out and make sure you have your contacts. Olmec will probably reach out to you today.

> Please let me know if you need anything else? I will be in touch to confirm this request was completed for you.
>
> You always brought the party with you and always will! J
>
> Cheers,
> Cheryl

150.    Jane Doe continued to work for Anonymous Inc. through November 2015, after she decided to leave Anonymous Inc. in October 2015.

151.    Anonymous Inc. and John Doe's failure to pay Jane Doe her commissions and salary and to promote Jane Doe after she declined to continue a romantic relationship with John Doe demonstrates a continuous and discrete practice and/or policy of discrimination.

152.    Jane Doe was initially given an email address when she was first hired by Anonymous Inc. in 2013 and continued to use the same "Anonymous Inc." email address through 2016. Moreover, Jane Doe had access to the Anonymous Inc. offices in New York until their lease was up in 2016, with the consent of John Doe at all relevant times.

153.    Jane Doe never received her commission from Defendants for the Stradivarius violin transaction, despite requesting the same from John Doe.

154.    As a result of the quid pro quo harassment by John Doe, Jane Doe was caused severe emotional distress and loss of past and future income.

155.    In or around October 2016, Anonymous Inc. hired two males from Goldman Sachs Family Office as directors. Jane Doe was not offered this position at any time.

## **COUNT I**
### **VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW— GENDER DISCRIMINATION IN TERMS, CONDITIONS, AND PRIVILEGES New York City Administrative Code § 8-107 (Against All Defendants)**

156.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein

157.    Plaintiff is a former employee of Anonymous Inc.

158.    Defendant John Doe – is an employee and agent of Defendant Anonymous Inc.

159.    During all times relevant to this claim, Defendant John Doe functioned in a managerial or supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's employment.

160.    Defendant John Doe participated in the conduct giving rise to this claim. He aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

161.    Defendants have subjected Plaintiff to discrimination in the terms, conditions, or privileges of employment in violation of the New York City Human Rights Law. Defendants have treated Plaintiff differently from and less preferably than similarly situated male employees.

162.    Plaintiff's sex has been a determining factor in Defendants' subjecting of Plaintiff to discrimination in the terms, conditions, or privileges of employment.

163.    By reason of the continuous nature of Defendants' discriminatory conduct, namely by failing to pay Plaintiff a salary, and/or commissions, and failing to promote Plaintiff, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

164.    As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages

165.    As a result of Defendants' unlawful conduct, Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

**COUNT II**
**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW—**
***QUID PRO QUO* SEXUAL HARASSMENT**
**New York City Administrative Code**
**§ 8-107**
**(Against All Defendants)**

166.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

167.    Plaintiff is a female employee of Anonymous Inc.

168.    Defendant John Doe – an employee and agent of Defendant Anonymous Inc. During all times relevant to this claim, Defendant John Doe functioned in a managerial or supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's employment.

169.    Defendant John Doe participated in the conduct giving rise to this claim. He aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

170.    Defendants subjected Plaintiff to unwelcome *quid pro quo* sexual harassment based on her sex. Defendants subjected Plaintiff to unwelcome sexual conduct, including sexual comments and sexual advances. She rejected the unwelcome sexual advances and coercion perpetrated by John Doe until it became too much to handle.

171.    Plaintiff's reaction to that conduct was used as the basis for decisions affecting the compensation, terms, conditions, or privileges of her employment. Among other things, as a result of Plaintiff's rejection of John Doe's sexual advances and ultimate termination of their intimate

relationship, John Doe, facilitated by Anonymous Inc., obstructed Plaintiff's ability to perform her work.

172.    A reasonable woman would consider that she was being treated less well than other employees under all of the circumstances. Plaintiff actually considered that she was being treated less well than other employees because she is female.

173.    A reasonable person would have considered the conduct to be significant and not trivial or petty. Plaintiff actually considered the conduct to be significant and not trivial or petty.

174.    Defendants created, enabled, and maintained a sexually hostile work environment.

175.    Defendant Anonymous Inc. knew of Defendant John Doe's conduct and accepted it and/or failed to take immediate and appropriate corrective action.

176.    Moreover, in the exercise of reasonable care, Defendant Anonymous Inc. should have known of Defendant John Doe's conduct and failed to exercise reasonable diligence to prevent such conduct.

177.    Defendant Anonymous Inc. lacks a meaningful and responsive procedure for investigating complaints of discriminatory practices by employees, agents, and persons employed as independent contractors and for taking appropriate action against those persons who are found to have engaged in such practices.

178.    Defendant Anonymous Inc. fails to effectively communicate a firm policy against such practices to employees, agents, and persons employed as independent contractors.

179.    Defendant Anonymous Inc. lacks a program to educate employees and agents about unlawful discriminatory practices under city laws.

180.     Defendant Anonymous Inc. lacks procedures for the supervision of employees and agents and for the oversight of persons employed as independent contractors specifically directed at the prevention and detection of such practices.

181.     By reason of the continuous nature of Defendants' discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

182.     As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

183.     Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

<u>**COUNT III**</u>
**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW—**
**HOSTILE WORK ENVIRONMENT**
**New York City Administrative Code § 8-107 (Against All**
**Defendants)**

184.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

185.     Plaintiff is a former female employee of Anonymous Inc..

186.     Defendant John Doe – the C.E.O. and founder of Anonymous Inc.– is an employee, manager and agent of Defendant Anonymous Inc. During all times relevant to this claim, Defendant John Doe functioned in a managerial or supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's employment.

187.    Defendant John Doe participated in the conduct giving rise to this claim. He aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

188.    Defendants subjected Plaintiff to a hostile work environment based on her sex.

189.    The hostile work environment included sexual comments, sexual advances, and the obstruction of Plaintiff's work. All of this conduct was unwanted.

190.    A reasonable woman would consider that she was being treated less well than other employees under all of the circumstances. Plaintiff actually considered that she was being treated less well than other employees because she is female and because she turned down the advances of her supervisor, John Doe.

191.    A reasonable person would have considered the conduct to be significant and not trivial or petty. Plaintiff actually considered the conduct to be significant and not trivial or petty.

192.    Defendants created, enabled, and maintained a sexually hostile work environment.

193.    Defendant Anonymous Inc. knew of Defendant John Doe's conduct and accepted it and/or failed to take immediate and appropriate corrective action.

194.    Moreover, in the exercise of reasonable care, Defendant Anonymous Inc. should have known of Defendant John Doe's conduct and failed to exercise reasonable diligence to prevent such conduct.

195.    Defendant Anonymous Inc. lacks a meaningful and responsive procedure for investigating complaints of discriminatory practices by employees, agents, and persons employed as independent contractors and for taking appropriate action against those persons who are found to have engaged in such practices.

196.    Defendant Anonymous Inc. fails to effectively communicate a firm policy against such practices to employees, agents, and persons employed as independent contractors.

197.    Defendant Anonymous Inc. lacks a program to educate employees and agents about unlawful discriminatory practices under local, state, and federal laws.

198.    Defendant Anonymous Inc. lacks procedures for the supervision of employees and agents and for the oversight of persons employed as independent contractors specifically directed at the prevention and detection of such practices.

199.    By reason of the continuous nature of Defendants' discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

200.    As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

201.    Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

<u>**COUNT IV**</u>
**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW**
**RETALIATION**
**New York City Administrative Code § 8-107**
**(Against All Defendants)**

202.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

203.    Plaintiff is a female employee of Anonymous Inc.

204.    Defendant John Doe – an employee, agent and supervisor of Defendant Anonymous Inc. During all times relevant to this claim, Defendant John Doe functioned in a

managerial or supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's employment.

205.    Defendant John Doe participated in the conduct giving rise to this claim. He aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

206.    Plaintiff engaged in protected activity, and Defendants were aware of Plaintiff's protected activity. Among other things, Plaintiff opposed the unlawful treatment to which she was being subjected by rejecting Defendant John Doe's sexual advances and by making clear of her disapproval of their intimate relationship by alerting John Doe that she could not continue with it. The practices opposed by Plaintiff constitute colorable violations of the New York City Human Rights Law.

207.    Plaintiff suffered actions that would be reasonably likely to deter a person from engaging in a protected activity. Among other things, Defendant John Doe obstructed Plaintiff from any promotions and systematically failed to pay Plaintiff a salary since she ended their intimate relationship.

208.    There was a causal connection between Plaintiff's protected activities and Defendants' actions. Defendants subjected Plaintiff to such actions because of and in retaliation for Plaintiff's protected activities.

209.    By reason of the continuous nature of Defendants' retaliatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

210.    As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

211.    Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

**COUNT V**
**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW—**
**CONSTRUCTIVE DISCHARGE**
**New York City Administrative Code § 8-107**
**(Against All Defendants)**

212.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

213.    Plaintiff is a former female employee of Anonymous Inc..

214.    Defendant John Doe – a senior member of Anonymous Inc., is an employee and agent of Defendant Anonymous Inc. During all times relevant to this claim, Defendant John Doe functioned in a managerial or supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's employment.

215.    Defendant John Doe participated in the conduct giving rise to this claim. He aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

216.    Defendants subjected Plaintiff to a hostile work environment based on her sex.

217.    The hostile work environment included sexual comments, sexual advances, and the obstruction of Plaintiff's work. All of this conduct was unwanted.

218.    A reasonable woman would consider that she was being treated less well than other employees under all of the circumstances. Plaintiff actually considered that she was being treated less well than other employees because she is female and because she turned down the advances of her supervisor, John Doe.

219.    A reasonable person would have considered the conduct to be significant and not trivial or petty. Plaintiff actually considered the conduct to be significant and not trivial or petty.

220.    Defendants created, enabled, and maintained a sexually hostile work environment that a reasonable person in Jane Doe's shoes would have felt compelled to resign.

221.    Defendant Anonymous Inc. knew of Defendant John Doe's conduct and accepted it and/or failed to take immediate and appropriate corrective action.

222.    Moreover, in the exercise of reasonable care, Defendant Anonymous Inc. should have known of Defendant John Doe's conduct and failed to exercise reasonable diligence to prevent such conduct.

223.    Defendant Anonymous Inc. lacks a meaningful and responsive procedure for investigating complaints of discriminatory practices by employees, agents, and persons employed as independent contractors and for taking appropriate action against those persons who are found to have engaged in such practices.

224.    Defendant Anonymous Inc. fails to effectively communicate a firm policy against such practices to employees, agents, and persons employed as independent contractors.

225.    Defendant Anonymous Inc. lacks a program to educate employees and agents about unlawful discriminatory practices under local, state, and federal laws.

226.    Defendant Anonymous Inc. lacks procedures for the supervision of employees and agents and for the oversight of persons employed as independent contractors specifically directed at the prevention and detection of such practices.

227.    Defendants Anonymous Inc. and John Doe intentionally created an intolerable work atmosphere that forced Plaintiff Jane Doe to quit involuntarily.

228.    By reason of the continuous nature of Defendants' discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

229.    As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

230.    Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## PRAYER FOR RELIEF ON CLAIMS

WHEREFORE, Plaintiff prays that this Court enter judgement in her favor and against Defendants for the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the City of New York;

B.    An injunction and order permanently restraining Defendants from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.    An award of damages, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages incurred as a result of Defendants' unlawful actions;

D.    An award of damages to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career prospects and fulfillment;

E.    An award of damages to be determined at trial, to compensate Plaintiff for

emotional distress and/or mental anguish incurred as a result of Defendants' unlawful actions;

     F.     An award of punitive damages to be determined at trial, to deter Defendants from engaging in such further unlawful conduct, including the policies and practices complained of herein;

     G.     Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: January 21, 2019
     New York, New York

                    Respectfully submitted,

                    MARK DAVID SHIRIAN P.C.

                    By: _____
                          Mark D. Shirian, Esq.
                    228 East 45th Street, Suite 1700B
                    New York, NY 10017
                    Telephone: (516) 417-0201
                    Facsimile: (212) 898-0163
                    Email: mshirian@shirianpc.com
                    COUNSEL FOR PLAINTIFF

To:
**CONSTANY, BROOKS, SMITH & PROPHETE LLP**
Anjanette Cabrera, Esq.
Stephen Stecker, Esq.
620 Eighth Avenue, 38th Floor
New York, NY 10018
(646) 341-6536
COUNSEL FOR DEFENDANTS

31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

JANE DOE,

                              Plaintiff,

            -against-

ANONYMOUS INC., and JOHN DOE, individually
and in his official capacity,

                              Defendants.
--------------------------------------------------------------X

No.: 1:18-cv-10924

Judge Paul A. Crotty

### ATTORNEY'S AFFIRMATION OF SERVICE

Mark D. Shirian, an attorney at law admitted to practice before this Court, affirms as follows:

On the 21st day of January, 2019, I served a .pdf copy of the following document:

(1)      Complaint and Jury Demand

      upon the attorneys for Defendants, **CONSTANY, BROOKS, SMITH & PROPHETE LLP** c/o Stephen Stecker, Esq. and Anjanette Cabrebra, Esq., by email at: sstecker@constangy.com and acabrera@constangy.com.

      I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 21, 2019
       New York, NY


                                          Mark D. Shirian
                                          Attorney for Plaintiff